**E-FILED**
Tuesday, 18 March, 2008  09:55:21 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA/DANVILLE DIVISION**

| | | |
|---|---|---|
| **LORI KIRCHER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO.  08-CV-_____** |
| | ) | |
| **CAPITOL PAGING, INC., an Illinois** | ) | |
| **Corporation d/b/a CAPITEL** | ) | |
| **COMMUNICATIONS OF CENTRAL** | ) | |
| **ILLINOIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Now comes the Plaintiff, LORI KIRCHER, by DANIEL C. JONES, of HEFNER, EBERSPACHER, TAPELLA, ARMSTRONG, GROVE, JONES & BRITTON, her attorneys, and for her Complaint against Defendant, CAPITOL PAGING, INC., an Illinois Corporation d/b/a CAPITEL COMMUNICATIONS OF CENTRAL ILLINOIS, states as follows:

1.     Plaintiff brings this action to redress injuries caused her by Defendant for acts of religious discrimination against her caused by the tortious conduct of Defendant and its agents.

2.     Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e *et seq.*  Jurisdiction is also invoked pursuant to 29 U.S.C. Sec. 626 and 42 U.S.C. Sec. 2000e-5(g), allowing equitable and other relief, and pursuant to 28 U.S.C. Sec. 1331 and 1343(a)(4).

3.    On or about August 8, 2007, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission as charge number 440-2007-07209, charging discrimination against Defendant.  Said charge was also filed with the Illinois Department of Human Rights.

4.    On December 20, 2007, the Equal Employment Opportunity Commission issued a Notice of Right to Sue, which notice was received by Plaintiff's attorneys on December 26, 2007, and a copy of said Notice is attached hereto as Exhibit A and is incorporated herein by reference.

5.    Plaintiff is a resident of Tower Hill, Shelby County, Illinois, was born on April 2, 1987, and is currently age 20.

6.    Plaintiff is a member of the United Church of God, which maintains the Christian faith.

7.    Plaintiff was initially employed as a Sales Agent by Defendant at said Defendant's retail sales business in Pana, Illinois to sell cellular telephones, related equipment, and service packages.  Plaintiff was initially hired by Defendant on December 26, 2006, and Plaintiff was terminated from said employment on June 1, 2007.

8.    At all times relevant herein, Defendant was and remains a Corporation doing business in the State of Illinois, which operated, managed, maintained, and directed, through its employees, a retail sales facility named Capitel Communications of Central Illinois in Pana, Christian County, Illinois.

9.    At all times relevant herein, Defendant was and is an employer as defined in Sec. 701(b), (g) and (h) of the Civil Rights Act, 42 U.S.C. Sec. 2000e(b), (g), and (h), in

2

that Defendant employed at least fifteen persons, and was engaged in an industry affecting commerce.

10.    When Plaintiff was hired to work for Defendant, Plaintiff informed her supervisors, including her immediate supervisor, Regional Manager Don Adams, that her religious convictions did not allow her to work past sunset on Fridays, and did not allow her to work on Saturdays.  In addition, Plaintiff informed her supervisors, including Regional Manager Adams, that she would be required to take off certain holy days throughout the year.

11.    Defendant maintains an employee handbook, and the employee handbook states that the procedure for being terminated from one's employment includes:

    1.    Verbal warning,

    2.    Written warning,

    3.    Suspension, and

    4.    Termination.

12.    When Plaintiff first started working at Defendant's Pana facility, Plaintiff was required to work with Don Adams in order to receive appropriate training, including training relating to closing of the store.  Plaintiff and her husband only have one vehicle, and Plaintiff's husband would occasionally pick Plaintiff up at the store after work.  While Plaintiff was closing the store with Don Adams, Don Adams let Plaintiff's husband into the store while they finished closing, and while the doors were locked.  Don Adams never mentioned to Plaintiff that having her husband in the store while she closed was against company policy.

3

13.     Subsequently, Plaintiff was working at the aforesaid Pana facility one evening at closing time, and a computer repairman named Kevin, who was also one of Defendant's employees, was in the Pana store to repair a computer problem.  Plaintiff's husband was present.   Kevin asked Plaintiff if her husband stayed there while she closed, and Plaintiff said yes because they only have one vehicle, and she never knew exactly when she would get done.  Kevin responded by stating that he used to have his wife come in the store all the time while he closed.

14.     The aforesaid employee named Kevin, and the aforesaid Don Adams, are not members of Plaintiff's Church, or affiliated with her Church organization.

15.     After Plaintiff began working at Defendant's aforesaid facility, said Don Adams, and other employees at Defendant's aforesaid facility, repeatedly mocked Plaintiff for her religious beliefs and practices.

16.     Defendant maintains a policy for requesting time off from work, and such policy requires an employee to fill out a form requesting the time off, and sending the form to Defendant's Administrative Office for approval.

17.     Prior to April 9, 2007, Donna Combes, another employee at Defendant's aforesaid Pana facility, orally requested time off from work from the aforesaid Don Adams, so that she could go to Tennessee to get her son.  Said Donna Combes asked Don Adams what paperwork needed to be filled out, and Don Adams responded that she should not worry about it, and that they would just work the matter into the work schedule.  Donna Combes received the time off from work without having to fill out any paperwork.  On another occasion, said Donna Combes received time off from work based on an oral

4

request, without having to fill out any paperwork. Said Donna Combes is not a member of Plaintiff's church organization, or affiliated in any way with Plaintiff's church.

18.     April 9, 2007 was a holy day recognized by Plaintiff's church and known as the Days of Unleavened Bread.  Two weeks prior to April 9, 2007, Plaintiff called the aforesaid Don Adams to inform him that she needed this holy day off work.  Plaintiff asked Don Adams if there was any paperwork that needed filled out.  Don Adams told Plaintiff to fill out the form, and fax it to the Administrative Office.  Plaintiff filled out the appropriate form and faxed it to the Administrative Office.

19.     Plaintiff received no word from Defendant about her requested day off for April 9, 2007, and approximately one week after submitting the original request, called Don Adams to ask if the requested day off had been granted.  Don Adams responded that approval had not come, as he had not gotten any paperwork.  Plaintiff responded that she had sent it the prior week, and Don Adams responded by saying he had never received it, and Plaintiff needed to fax it again.  Plaintiff filled out another Request Form and faxed it to the Administrative Office again that day.  Several days later, Don Adams called Plaintiff, and asked Plaintiff if she had filled out and faxed the form.  Plaintiff said yes, and Don Adams said he had never received it.  Plaintiff filled out the form and faxed it a third time.

20.     When the work schedule came out for the week that included April 9, 2007, Plaintiff was scheduled to work until sunset on April 8, 2007, and on April 9, 2007.  Plaintiff called Don Adams to ask why she did not receive the holy day off.  Don Adams stated that Plaintiff had never filled out the paperwork, and asked Plaintiff what she expected him to do on such short notice.  Plaintiff responded by stating that she had faxed the document

5

to him three different times, had called two weeks in advance, and had to have the evening of April 8, 2007 and the day of April 9, 2007 off. Don Adams stated there was nothing he could do, and that any schedule changes at this point needed to go through Dave Vail, and he could not approve any leave without the proper paperwork. Plaintiff asked Don Adams if he wanted to call Dave Vail and explain the situation to him, and Don Adams stated that he would deal with the situation and change the schedule. Plaintiff eventually received the day of April 9, 2007 off.

21.    Prior to May 27, 2007, Plaintiff again called Don Adams to let him know that May 27, 2007 was a holy day, that she needed the day off, and that she would fill out the forms and fax it to the Administrative Office. Don Adams responded by asking Plaintiff if she was going to church, when she said she was Don Adams responded by asking Plaintiff what animal she was sacrificing that weekend. Plaintiff filled out the appropriate form, and faxed it to the Administrative Office. It was faxed back to her with a note that she would have the day off.

22.    Approximately two days prior to May 27, 2007, Don Adams called Plaintiff and told Plaintiff from this point forward he needed her to type up a paper stating what days she would need off, what they "stood for," and where Plaintiff was going to be when she took the days off. When Plaintiff asked why, Don Adams stated that if Plaintiff did not do so, then she would not get any further days off because they did not believe what she was doing or where she was going.

6

23.     No other employees were asked to fill out additional paperwork related to requested time off, nor were they required to state what days they were asking for, what any requested days off "stood for," or where the employee would be.

24.     On June 1, 2007, Plaintiff was working in the aforesaid Pana facility alone. At approximately 2:30 p.m., Plaintiff received a phone call from Don Adams, who asked Plaintiff if her husband touched the money in the facility when she closed the store  after work.  Plaintiff responded that her husband did not touch the money.  Don Adams then asked Plaintiff if her husband was in the store while Plaintiff closed the store, and Plaintiff responded that he was.  Don Adams responded that this was not allowed, and that they were terminating Plaintiff's employment.  Don Adams told Plaintiff to close up the store as normal, put the money in the safe, and to leave.

25.     After being informed of her termination, Plaintiff called Dave Vail to ask why she had been fired.  Said Dave Vail responded that he had received a telephone call from an unknown person stating that Plaintiff's husband sits in the store and does things that he is not supposed to while Plaintiff closes.  Dave Vail then asked if Plaintiff's husband touched the cash while she was closing, and Plaintiff said no.  Dave Vail then asked if Plaintiff's husband was in the store when she closed, and Plaintiff responded that her husband was sometimes in the store while she closed.  Dave Vail responded by stating that Plaintiff was fired, and hung up the telephone.

26.     Plaintiff never received a verbal warning, written warning, or suspension for allowing her husband in the store after closing time prior to her termination.

7

27.    Defendant takes part in a process called the "secret shop."  During this process, an unidentified corporate employee comes to the aforesaid facility, and pretends to be a customer.  The sales person is then graded on their performance, based upon applicable criteria.  The first time that Plaintiff was "secret shopped"  she received a 100% score, and received a bonus on her next paycheck.  Shortly after requesting the first Holy Day off on April 9, 2007, Plaintiff was "secret shopped," and got a low score, requiring her to take more training classes at her own expense, and suspending her for two days, and putting her on probation.  After she asked for the second Holy Day off, but before the Holy Day itself, Plaintiff was "secret shopped" again, and received a low score.  Plaintiff did not do anything during the second and third "secret shops" than she had done during the first "secret shop."

28.    Defendant's employees who were not a member of Plaintiff's church affiliation were granted time off from work without having to go through procedures that Plaintiff was required to, and therefore employees that were not a part of Plaintiff's Church affiliation were treated in a preferential matter to Plaintiff.

29.    Defendant's employees who were not members of Plaintiff's Church affiliation were not required to fill out paperwork stating what days they would take off, the purpose of their requested time off, and the place where they would be during such time off, and therefore received preferential treatment to Plaintiff.

30.    Defendant's employees who were not members of Plaintiff's church affiliation were allowed to have family members in the store after closing time while Plaintiff was not, and therefore received preferential treatment to Plaintiff.

8

31.     Defendant's refusal to accommodate Plaintiff's religious beliefs, and granting preferential treatment to employees who were not part of Plaintiff's church affiliation, was wrongful, and in willful violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §2000e *et seq*.

32.     At the time of the termination of her employment, Plaintiff was performing her job duties in an acceptable manner.

33.     Defendant's decision to terminate Plaintiff's employment was based upon Plaintiff's religious affiliation and was wrongful; and as a result of this wrongful discharge, Plaintiff has suffered great harm, including the loss of income and other benefits.

34.     Defendant's decision to terminate Plaintiff's employment was based upon Plaintiff's religious affiliation and was wrongful; and as a result of this wrongful discharge, Plaintiff suffered great harm, including the loss of income and other benefits.

35.     Defendant's termination of Plaintiff's employment was in wilful violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

WHEREFORE, Plaintiff, LORI KIRCHER, respectfully prays that Judgment be entered in her favor and against Defendant, CAPITOL PAGING, INC. An Illinois Corporation d/b/a CAPITEL COMMUNICATIONS OF CENTRAL ILLINOIS, which:

A.     Finds that the above described acts of Defendant, by and through its employees, constituted religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, for failure to accommodate Plaintiff's religious beliefs, and for its wrongful termination of Plaintiff's employment;

9

B.    Awards Plaintiff damages in an amount equal to back pay and lost benefits from the date of her termination, July 1, 2007, to the date of Judgment;

C.    Finds that Defendant's violations of the above cited statutes was wilful, and awards Plaintiff liquidated damages for such wilful statutory violation;

D.    Orders the reinstatement of Plaintiff to her former position, salary, and benefits, or in the alternative, awards front pay to Plaintiff;

E.    Awards Plaintiff reasonable attorneys' fees and costs herein, including the costs of all testifying and non-testifying witnesses; and

F.    Awards Plaintiff such other, further, and equitable relief as may be just for Plaintiff in the circumstances.


Respectfully submitted,

s/ DANIEL C. JONES
Attorneys for Plaintiff
Bar # 75339
HEFNER, EBERSPACHER, TAPELLA,
ARMSTRONG, GROVE, JONES & BRITTON
P.O. Box 627
Mattoon, IL  61938-0627
Telephone: (217) 639-7800
Fax: (217) 639-7810
attorneys@het-attorneys.com

## JURY DEMAND

Plaintiff, LORI KIRCHER, by DANIEL C. JONES of HEFNER, EBERSPACHER,

TAPELLA, ARMSTRONG, GROVE, JONES & BRITTON, her attorneys, hereby demands

trial by jury.

Respectfully submitted,
s/ DANIEL C. JONES
Attorneys for Plaintiff
Bar # 75339
HEFNER, EBERSPACHER, TAPELLA,
ARMSTRONG, GROVE, JONES & BRITTON
P.O. Box 627
Mattoon, IL  61938-0627
Telephone: (217) 639-7800
Fax: (217) 639-7810
attorneys@het-attorneys.com

HEFNER, EBERSPACHER, TAPELLA,
ARMSTRONG, GROVE, JONES & BRITTON
P.O. Box 627
Mattoon, IL  61938-0627
Telephone: (217) 639-7800
Fax: (217) 639-7810
attorneys@het-attorneys.com
kircher/2554.00/Complaint

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
      Plaintiff

☐ 3  Federal Question
      (U.S. Government Not a Party)

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD _____

### FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**.    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Lori Kircher<br>503 East Freemont<br>Tower Hill, IL 62571<br><br>CERTIFIED MAIL 7099 3400 0014 4054 0743 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2800<br>Chicago, IL 60661 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-07209 | Nanisa Pereles,<br>Investigator | (312) 353-8739 |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ ] More than 180 days have passed since the filing of this charge.

[X] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

John P. Rowe,
District Director

12/20/2007
*(Date Mailed)*

Enclosures(s)

cc:   **CAPITOL PAGING, INC.**
      d/b/a Capitol Communications of Central Illinois